# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 70

APRIL TERM, A.D. 2026

June 30, 2026

SAM MCDONALD,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' COMPENSATION
DIVISION,

Appellee
(Respondent).

S-25-0228

*Appeal from the District Court of Sweetwater County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*
Remi A. Bullock, Balloun Law Professional Corporation, Cheyenne, Wyoming.

*Representing Appellee:*
Keith G. Kautz, Attorney General; Mark A. Klaassen, Deputy Attorney General; Peter F. Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL, Justice.**

[¶1]    Sam McDonald suffered a work-related injury to his head and was covered by workers' compensation.  A couple of years after the compensable injury, in order to treat severe migraines which were caused by the injury to his head, Mr. McDonald's doctor increased the dosage of a medication he was already taking, Depakote.[1]  He later sought additional workers' compensation benefits for pancreatitis, claiming it was causally related to his compensable head injury because it was caused by the dosage increase of Depakote. The Wyoming Department of Workforce Services, Workers' Compensation Division (the Division) disagreed and denied benefits.  The Wyoming Medical Commission upheld the denial, concluding Mr. McDonald had failed to satisfy his burden of showing the dosage increase of Depakote caused his pancreatitis, and he failed to prove he was eligible for additional temporary total disability (TTD) benefits.  The district court affirmed the Medical Commission's decision.  We also affirm.

## ISSUE

[¶2]    Mr. McDonald raises two issues, which we rephrase as one:

Was the Medical Commission's decision that Mr. McDonald failed to meet his burden to show the benefits requested for his pancreatitis were related to his compensable workplace injury supported by substantial evidence, not arbitrary and capricious, and in accordance with law?

## FACTS

[¶3]    In late 2014, Mr. McDonald injured his head when the hood of a car fell on him during the course of his work as a mechanic.  The Division found his injury compensable in early 2015, and began providing Mr. McDonald with benefits, including permanent impairment benefits and TTD benefits.

[¶4]    Mr. McDonald's injury caused him to suffer debilitating migraines.  Mr. McDonald began seeing neurologist Dr. George Zinkhan in February of 2015, who treated him for his migraines.  At Mr. McDonald's first appointment, Dr. Zinkhan noted that prior to Mr. McDonald's compensable workplace injury, he had been prescribed Depakote at 500 milligrams (mg) three times daily for treatment of depression and bipolar disorder and was still currently taking that dose.[2]  Dr. Zinkhan informed Mr. McDonald that Depakote is also prescribed for treatment of migraines and recommended Mr. McDonald continue to

---

[1] "Depakote" is a registered trademark name for divalproex sodium.  https://www.depakote.com (last visited June 18, 2026).  Dr. Fishman and Dr. Brodis also call Depakote "valproic acid."
[2] Mr. McDonald's medical records indicate he was initially prescribed 250 mg of Depakote three times daily in April of 2012, and the dosage was increased to 500 mg three times daily in October 2012.

1

use it at the current dosage of 500 mg taken three times daily not only for his depression and bipolar disorder but for his migraines as well.

[¶5]    In June of 2016, Dr. Zinkhan recommended increasing the Depakote dose Mr. McDonald was taking to 750 mg three times daily.[3]  The Division did not initially approve the increase, but after it did, Dr. Zinkhan wrote a prescription increasing the Depakote dosage to 750 mg three times daily at Mr. McDonald's April 23, 2018, appointment.  The record is unclear as to whether Mr. McDonald had increased his Depakote dosage to 750 mg three times daily in the interim time between when Dr. Zinkhan recommended the increase in June of 2016 and after the Division approved the increase and Dr. Zinkhan wrote him a prescription for the increase on April 23, 2018.  What is known is Mr. McDonald began taking the increased dosage sometime after the April 23, 2018, appointment, with the possibility that he began taking the increased dosage that very day.

[¶6]    On December 24, 2019, Mr. McDonald started having severe abdominal pain and vomiting so he went to the emergency room.  It was determined that he was suffering from an acute episode of pancreatitis.  After that incident, he had reoccurring episodes of pancreatitis and had extensive treatment for the reoccurring episodes, including insertion of a feeding tube and various medical procedures including the removal of his gall bladder.  Mr. McDonald quit taking Depakote around this time.

[¶7]    Mr. McDonald did well for a while after his gall bladder and the feeding tube were removed.  However, by November of 2020, he was again hospitalized for pancreatitis, even though he had stopped taking Depakote.  He was again admitted to the hospital in February of 2021 for "recurrent acute on chronic pancreatitis."  The discharge summary for this hospital stay stated, "[i]nitially attributed to Depakote toxicity, unclear etiology of the recurrences after Depakote was stopped."

[¶8]    Mr. McDonald filed applications for TTD benefits due to the pancreatitis.  Dr. Jonathan P. Fishman, a board-certified gastroenterologist, was retained by the Division to provide an Independent Medical Examination (IME) of Mr. McDonald's medical records and whether the pancreatitis was compensable.  Dr. Fishman did not see or speak with Mr. McDonald; however, he reviewed extensive medical records including Dr. Zinkhan's records.  In April of 2022, Dr. Fishman submitted his IME report to the Division in which he concluded Mr. McDonald's pancreatitis was caused by the Depakote he had been taking, but it was not related to the 2014 compensable work-place injury because Mr. McDonald had been taking the Depakote prior to the injury.

[¶9]    After receiving Dr. Fishman's IME report, the Division denied Mr. McDonald's request for TTD benefits.  In its denial letter to Mr. McDonald, the Division stated,

---

[3] Dr. Zinkhan testified in his deposition that in 2016, presumably June, he started sending Mr. McDonald new prescriptions for him to take the higher dose, i.e. 750 mg three times daily.

"according to the paper review Independent Medical Examination . . . treatment for the pancreas is not related to the compensable head and cervical spine" injury. Mr. McDonald timely objected to the Division's decision and the matter was referred to the Medical Commission for a contested case hearing.

[¶10] The Medical Commission was tasked with determining whether medical expenses related to Mr. McDonald's pancreatitis were caused by the compensable work injury either as a second compensable injury or an aggravation of the original injury, and whether Mr. McDonald was eligible for TTD benefits after September 20, 2022, due to his pancreatitis. The Medical Commission held a contested case hearing on August 24, 2023.

[¶11] Multiple Doctors testified by deposition and some concluded Mr. McDonald's pancreatitis was the result of his workplace injury. Dr. Fishman testified as described above. Dr. Zinkhan believed the pancreatitis was caused by taking Depakote and the condition was a result of the workplace injury. However, he also testified taking Depakote for a longer period of time did not necessarily increase the risk of pancreatitis, someone who took it for a short time had the same risk as someone who is on it for years.

[¶12] Dr. Eskelson concluded the Depakote had caused Mr. McDonald's pancreatitis, but he was unaware of when Mr. McDonald began taking the Depakote. Dr. Eskelson's opinion was also based on the opinion of another one of Mr. McDonald's treating physicians, not his own opinion.

[¶13] The Medical Commission issued its decision, upholding the Division's final determination denying medical benefits and additional TTD benefits. It concluded Mr. McDonald failed to prove his pancreatitis was a second compensable injury and that he was entitled to additional TTD benefits or medical expenses due to the pancreatitis. The Medical Commission also concluded that even if it had determined Mr. McDonald's pancreatitis was related to the 2014 work injury, he would still be ineligible for additional TTD benefits because the preponderance of the evidence showed Mr. McDonald had no expectation of returning to work within twelve months of September of 2022.

[¶14] Mr. McDonald petitioned the district court for judicial review of the Medical Commission's decision, but before the district court could rule on that petition, he requested leave to present additional evidence. The district court granted Mr. McDonald's request and remanded the case back to the Medical Commission. On remand, the issues were the same and the Medical Commission considered the additional evidence of Dr. Brodis's IME report, his deposition testimony, and an addendum from Dr. Fishman. The Medical Commission held a supplemental contested case hearing on remand. Dr. Brodis testified he believed the pancreatitis was a result of the workplace injury because of the timing of the pancreatitis which he understood to be within two months of the increase of Depakote.

[¶15] After the remand hearing, the Medical Commission issued its order affirming its prior decision. In its subsequent order, the Medical Commission reiterated its conclusions from its prior order, which stated:

> 102. It is undisputed that McDonald took Depakote for at least two years prior to his work accident and continued to take the same dosage for another five years, for seven years total. Then an additional 250 mg was added and taken for a period of twenty months. According to McDonald's testimony, the additional 250 mg was reduced and discontinued between four to six weeks before his pancreatitis occurred. The fact that pancreatitis occurred after the dosage was increased is not sufficient to establish the causal connection. Moreover, Dr. Zinkhan testified that the pancreatitis could have occurred "at any time and someone who is on it for a short term, say something like six months, **has a similar risk** to someone who has been on it for years." Likewise, Dr. Fishman testified that, "what I can tell you is episodes of pancreatitis have occurred when there have been dosage adjustments, and episodes of pancreatitis have occurred without dose adjustments." Accordingly, the expert testimony indicates that McDonald's risk of developing pancreatitis from Depakote usage was the same before and after the accident. The work accident and injuries did not lead to an increased risk of injury.

(Emphasis in original). With regard to the Division's denial of TTD benefits, the Commission again reiterated its conclusions from its prior order, which stated:

> 105. Aside from the failure of proof as to the relatedness of pancreatitis, with regard to the TTD claim, the Hearing Panel also notes that McDonald would not be entitled to the benefit in any event. He did not provide clear and convincing evidence that he met the standard of extraordinary circumstances and the related criteria. Moreover, the preponderance of the evidence showed that McDonald had no expectation of returning to work within 12 months of September of 2022, the date of his TTD application. McDonald had previously applied for and received SSDI benefits, which reasonably implies he was not intending upon returning to work even before he developed pancreatitis. McDonald also testified that he did not think he was employable after he developed pancreatitis and its complications. Likewise, Dr. Zinkhan's October 2018 office note indicates that he did not forsee [*sic*] that McDonald would return to work at any time in the future. Finally, on the TTD applications at issue herein, Dr. Eskleson answered "no" to the question, "Do you expect claimant to return to gainful employment within the next twelve (12) months?". [*sic*] Accordingly, even if this Hearing Panel were to determine that McDonald's pancreatitis was related to his 2014

4

work injuries he would still not qualify for additional TTD benefits under the pertinent statutes and the Division's rules and regulations.

[¶16]  Mr. McDonald petitioned the district court for review of the Medical Commission's decision.  The district court affirmed the decision, and Mr. McDonald timely appealed to this Court.

## STANDARD OF REVIEW

[¶17]  "When an appeal is taken from a district court's review of the Medical Commission's decision, we examine the case as if it came directly from the Medical Commission, 'giving no special deference to the district court's decision.'" *Zheng v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2024 WY 77, ¶ 18, 552 P.3d 818, 824 (Wyo. 2024) (citing *Nagel v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2024 WY 15, ¶ 10, 542 P.3d 622, 626 (Wyo. 2024)).  Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2023), which states in relevant part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.  The reviewing court shall:
>
> . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]
> >
> > . . . .
> >
> > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Valencia v. State ex rel. Dep't of Workforce Srvs., Workers' Comp. Div.*, 2024 WY 29 ¶ 11, 545 P.3d 415, 420 (Wyo. 2024) (citing *Matter of Worker's Comp. Claim of Vinson*, 2020 WY 126, ¶ 25, 473 P.3d 299, 308 (Wyo. 2020)).

[¶18] "A workers' compensation claimant must prove all essential elements of her claim by a preponderance of the evidence." *Zheng*, ¶ 19, 552 P.3d at 824 (quoting *McBride v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 100, ¶ 15, 515 P.3d 1060, 1064 (Wyo. 2022)). When reviewing the Medical Commission's decision that a claimant did not meet his burden of proof, we apply the following standard:

> If the [Medical Commission] determined that the burdened party failed to meet her burden of proof, we will decide whether there is substantial evidence to support the [Medical Commission's] decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the [Medical Commission] disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the [Medical Commission] could reasonably conclude as it did, based on all the evidence before it.

*Zheng*, ¶ 19, 552 P.3d at 824 (quoting *Valencia*, ¶ 12, 545 P.3d at 421 (internal citations and quotation marks omitted)); *see also Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, ¶ 10, 394 P.3d 454, 457 (Wyo. 2017). "Findings of fact are supported by substantial evidence if there is relevant evidence in the record which 'a reasonable mind might accept in support of the agency's conclusion.'" *Valencia*, ¶ 12, 545 P.3d at 420 (citing *McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 66 ¶ 8, 510 P.3d 1051, 1054 (Wyo. 2022)); *see also Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008).

[¶19] "Even if an agency record contains sufficient evidence to support the [Medical Commission's] decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a 'safety net' to catch other [Medical Commission] action that may have violated the Wyoming Administrative Procedures Act." *Zheng*, ¶ 20, 552 P.3d at 825 (quoting *Nagel*, ¶ 12, 542 P.3d at 627); *see also Valencia*, ¶ 13, 545 P.3d at 421. "The arbitrary-and-capricious standard applies when 'the [Medical Commission] failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law.'" *Zheng*, ¶ 20, 552 P.3d at 825 (quoting *McBride*, ¶ 16, 515 P.3d at 1064) (internal quotations omitted); *see also Triplett v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021). This standard "is more lenient and deferential to the [Medical Commission] than the substantial evidence standard because it requires only that there be a rational basis for the [Medical Commission's] decision." *Zheng*, ¶ 20, 552 P.3d at 825 (quoting *Nagel*, ¶ 12, 542 P.3d at 627).

[¶20] "We review [the Medical Commission's] conclusions of law de novo and affirm only if its conclusions are in accordance with the law." *Zheng*, ¶ 20, 552 P.3d at 825 (quoting *Triplett*, ¶ 35, 497 P.3d at 911); *see also Valencia*, ¶ 14, 545 P.3d at 421; § 16-3-114(c)(ii)(A).

## DISCUSSION

[¶21] Wyoming's second compensable injury rule provides that a subsequent injury may be compensable when an initial compensable injury ripens into a condition requiring additional medical treatment and a subsequent injury or condition is compensable if it is causally linked to the initial compensable work injury. *Valencia*, ¶ 16, 545 P.3d at 421 (quoting *In re Kaczmarek*, 2009 WY 110, ¶ 9, 215 P.3d 277, 281 (Wyo. 2009)); *Boylen v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 39, ¶ 11, 506 P.3d 765, 769 (Wyo. 2022). "Our description of the required causal connection between the first and second injuries has varied slightly from case to case but in every case '[t]he employee must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first.'" *Valencia*, ¶ 16, 545 P.3d at 422 (quoting *Boylen*, ¶ 11, 506 P.3d at 769); *see also, Kaczmarek*, ¶ 11, 215 P.3d at 282–83.

[¶22] The issue here is straightforward—whether the prescribed increase in dosage of Depakote for Mr. McDonald's migraines caused his pancreatitis. Mr. McDonald had the burden to show, by a preponderance of evidence, that it is more probable than not that the pancreatitis was caused by the increased dosage and he was therefore entitled to the requested medical and TTD benefits. In answering that question, the Commission was presented with testimony from Mr. McDonald and four medical experts, as well as extensive medical records.

[¶23] Mr. McDonald was generally required to provide expert medical testimony that it is more probable than not that the increased Depatoke dosage contributed in a material fashion to the precipitation, aggravation or acceleration of the pancreatitis. *See Hart v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 81, ¶ 15, 512 P.3d 640, 645 (Wyo. 2022); *Triplett*, ¶ 38, 497 P.3d at 912. After comprehensively reviewing Mr. McDonald's extensive medical records, his hearing testimony, expert deposition transcripts, and IME reports, the Medical Commission concluded Mr. McDonald failed to prove by a preponderance of the evidence that the increased Depakote dosage caused his pancreatitis and therefore was not a secondary injury. The Medical Commission's eleven-page order on remand, incorporating its original 35-page decision, detailed the evidence presented, findings of fact, conclusions of law, and ultimate determination.

[¶24] As noted in the standard of review, "[t]his Court must accept the Commission's decision if there is 'relevant evidence which a reasonable mind might accept in support of its conclusions.'" *Rodriguez v. State ex rel. Dep't of Workforce Servs., Workers' Comp.*

*Div.*, 2022 WY 166, ¶ 24, 522 P.3d 164, 170 (Wyo. 2022) (citing *In re Pickens*, 2006 WY 54, ¶ 21, 134 P.3d 1231, 1238 (Wyo. 2022)). "Even if evidence can be interpreted differently, under the substantial evidence test this Court will not substitute its judgment for that of the Commission." *Id.* Based on the evidence in the record, the Medical Commission could reasonably conclude Mr. McDonald failed to meet his burden to show the pancreatitis was caused by the increased Depakote dosage.

[¶25] Mr. McDonald contends he satisfied both the second injury rule and the substantial evidence requirement because a majority of the medical experts—two out of three—attributed his pancreatitis to the increased Depakote dosage for his migraines. However, he fails to cite any pertinent legal authority establishing that a mere numerical majority of expert opinions satisfies these legal standards. Mr. McDonald believes the Medical Commission gave undue weight to his own testimony and Dr. Fishman's deposition testimony and opinions. Thus, Mr. McDonald argues the Medical Commission's conclusion fails the substantial evidence test.

[¶26] "The fact-finder in a contested case hearing, in this case [the Medical Commission], must evaluate the medical records and testimony, including medical expert testimony, and determine the weight of the available evidence." *Valencia*, ¶ 18, 545 P.3d at 422 (quoting *Delacastro v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 40, ¶ 23, 321 P.3d 327, 333 (Wyo. 2014)); *see also Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 24, 247 P.3d 845, 852 (Wyo. 2011). Furthermore, credibility determinations are the unique province of the Medical Commission. *Zheng*, ¶ 23, 552 P.3d at 825 (citing *Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 54, 338 P.3d 921, 933 (Wyo. 2014)).

[¶27] "When presented with conflicting expert medical testimony, the Medical Commission determines the credibility and weight of the experts' opinions." *Zheng*, ¶ 23, 552 P.3d at 825 (quoting *Valencia*, ¶ 24, 545 P.3d at 424); *see also Stevens*, ¶ 36, 338 P.3d at 929. In fact, "[d]etermining whether a claimant is entitled to benefits where, as here, there exists conflicting medical testimony is precisely the purpose for which the Commission was created." *Valencia*, ¶ 24, 545 P.3d at 424 (quoting *Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49 ¶ 25, 250 P.3d 1082, 1091 (Wyo. 2011)). The Medical Commission "'is entitled to disregard an expert opinion if [it] finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant.'" *Valencia*, ¶ 18, 545 P.3d at 422 (quoting *Delacastro*, ¶ 23, 321 P.3d at 333); *see also Watkins*, ¶ 25, 250 P.3d at 1090–91.

[¶28] We will not overturn the Commission's credibility determinations or its weighing of the evidence unless they are "clearly contrary to the great weight of the evidence." *Zheng*, ¶ 23, 552 P.3d at 825 (citing *Valencia*, ¶ 18, 545 P.3d at 422); *see also Nagel*, ¶ 19,

542 P.3d at 628–29. In this case, the Medical Commission's determinations are not clearly contrary to the great weight of the evidence.

[¶29] The Medical Commission recognized the conundrum in Mr. McDonald's case—because the occurrence of someone developing pancreatitis from taking Depakote is so rare and uncertain, only through a process of elimination of causes does the question even arise as to whether Depakote caused the pancreatitis. The Medical Commission was provided with expert testimony that Depakote can occasionally—though rarely—induce pancreatitis at any time and at any dose, with or without dosage adjustments. One expert noted that only 125 cases of Depakote induced pancreatitis have been documented since 1979, with 60% of these cases occurring in children. The expert testimony also showed that the risk of developing pancreatitis from Depakote is the same whether a person takes it for weeks or for years.

[¶30] Dr. Zinkhan testified that someone who has been taking Depakote for a "short term, say something like six months, has a similar risk as someone who has been on it for years." Dr. Zinkhan described induced pancreatitis from Depakote as an "idiosyncratic reaction," which means "it can happen any time that you're on the Depakote." He further clarified that "[t]he length of time does not necessarily matter, just that you're on the Depakote . . . You can have it any time that you're on it."

[¶31] Dr. Fishman testified, because Mr. McDonald had been taking Depakote prior to his 2014 workplace injury, he "[didn't] see a direct connection between the head injury and the development of pancreatitis[.]" Dr. Fishman further testified episodes of pancreatitis have occurred with and without dose adjustments. He also testified there are a very small number of people who have developed pancreatitis from Depakote use, and that it is not a common condition.

[¶32] From Dr. Zinkhan's and Dr. Fishman's testimony, the Medical Commission concluded Mr. McDonald's risk of developing pancreatitis from Depakote usage was the same before and after the accident. It therefore concluded that the work accident and injuries did not lead to an increased risk of injury, i.e. pancreatitis.

[¶33] The Medical Commission found Dr. Brodis's testimony that the Depakote dose increase caused the pancreatitis did not satisfy Mr. McDonald's burden because the timing upon which Dr. Brodis based his opinion was faulty. Dr. Brodis testified he believed Mr. McDonald's pancreatitis was caused by the increased Depakote dose because it occurred within two months of the increase—putting the increase in October of 2019. However, the Medical Commission found that date to be inconsistent with the medical records it reviewed and the testimony it heard from Mr. McDonald and Dr. Zinkhan. Mr. McDonald had testified that he started the increased dosage in April of 2018, eighteen months before Dr. Brodis thought he started the increased dosage. Dr. Zinkhan also testified the increase began in April of 2018. The Medical Commission additionally found other medical records

indicate the Depakote was increased in June of 2019, six months prior to the pancreatitis attack. Furthermore, Mr. McDonald also testified he discontinued taking the extra dosage in November of 2019.

[¶34] Thus, there was conflicting evidence about the exact date Mr. McDonald began taking the increased Depakote dosage. It was within the Medical Commission's province to resolve the conflicting evidence. *Nagel*, ¶ 22, 542 P.3d at 629 (citing *In re Baldwin*, 2008 WY 125, ¶ 18, 196 P.3d 1087, 1093 (Wyo. 2008)). The Medical Commission determined Dr. Brodis's belief that the increased dosage only began in October of 2019 to be inaccurate, which was its prerogative, and we cannot say that determination is unreasonable because it was not contrary to the overwhelming weight of the evidence.

[¶35] The Medical Commission fully explained the reasons it discounted certain opinions of the experts on causation. It found that although Dr. Zinkhan did render an opinion that Mr. McDonald's use of Depakote for the 2014 work injury combined with his use of it for the preexisting conditions caused the pancreatitis, he did not provide a sufficient basis for that opinion. The Medical Commission also concluded Dr. Zinkhan did not provide any opinion or evidence the increased dosage caused or increased the risk of development of pancreatitis. It also found Dr. Brodis's testimony and opinions unpersuasive because they hinged on his mistaken belief the pancreatitis occurred within two months of Mr. McDonald taking the increased dose amount. As already noted, Mr. McDonald started taking the increased amount anywhere from six months to eighteen months before the pancreatitis occurred, with it being more likely than not that it was eighteen months, and he stopped taking the increased dosage a month before it occurred, contrary to Dr. Brodis's faulty timeline. The Medical Commission also discounted the literature and publications Dr. Brodis relied upon because they were not provided and they were not made part of the record. We cannot say the Medical Commission's rejection of these opinions was unreasonable because it also was not contrary to the overwhelming weight of the evidence.

[¶36] The Medical Commission's decision that Mr. McDonald did not meet his burden of proving a causal connection between his 2014 workplace injury and the pancreatitis due to the increased Depakote dosage is supported by substantial evidence as it clearly is not "contrary to the overwhelming weight of the evidence in the record as a whole." Therefore, the Medical Commission was correct Mr. McDonald was not entitled to any medical benefits or additional TTD benefits for the pancreatitis since it was not a secondary compensable injury. *See* Wyo. Stat. Ann. § 27-14-102(a)(xi) and 404(a) (LexisNexis 2025) and *Nagel*, ¶¶ 14–15, 542 P.3d at 627–28.

[¶37] Mr. McDonald also claims the Medical Commission's decision is arbitrary and capricious. However, the Medical Commission admitted all testimony and other evidence that was clearly admissible, and it provided appropriate findings of fact and conclusions of law. Therefore, like we held in *Vandom v. State ex rel. Dep't of Workforce Servs., Workers'*

*Comp. Div.*, 2023 WY 51, 529 P.3d 1084 (Wyo. 2023), this claim is inapplicable under these facts.

> The arbitrary and capricious standard is available as a 'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard. The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law. Mr. Baker, however, does not argue that the Commission failed to admit testimony or other evidence that was clearly admissible. Mr. Baker's arguments rely exclusively upon record evidence. As a result, the arbitrary and capricious standard is inapplicable.

*Id.*, ¶ 27, 529 P.3d at 1090–91 (quoting *Baker v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 60, ¶ 16, 395 P.3d 1095, 1101 (Wyo. 2017)) (citation modified). The record and our precedent thus defeats Mr. McDonald's argument that the Medical Commission failed to act in accordance with law.

[¶38] Because we find the Medical Commission's decision was supported by substantial evidence and not arbitrary and capricious and this is sufficient to affirm the decision, we need not discuss the Medical Commission's alternate conclusion that Mr. McDonald was not eligible for additional TTD benefits because he did not intend to return to work.

## CONCLUSION

[¶39] Mr. McDonald did not show, by a preponderance of the evidence, that his pancreatitis was caused by the increased Depakote dosage. Therefore, the pancreatitis was not a second compensable injury, and he was not entitled to medical and TTD benefits for it. The Medical Commission's decision is supported by substantial evidence as it was not contrary to the great weight of the evidence in the record as a whole, nor did it act arbitrarily or capriciously, or contrary to law. We affirm.